R. S. NEWBOLD & SON COMPANY v. NORTHERN DREDGE &
DOCK COMPANY.[1]

February 6, 1920.

No. 21,572.

**Contract — capacity of dredge — evidence sufficient to sustain finding.**

> Plaintiff furnished defendant with a dredge to be used by it in dredging out a lake under a contract with the park board of the city of Minneapolis. It was stipulated in the contract under which the dredge was furnished that if, when operated continuously, the dredge was able to remove 325,000 yards of material from the lake prior to January 1, 1915, defendant should execute its note for $2,000 to plaintiff. The dredge was not operated after November 16, 1914, and did not remove the yardage specified. Defendant refused to execute the note for that reason, and this action was brought to recover the amount for which it was to have been given. It is *held* that the evidence sustains a finding that the dredge might have been operated longer than it was, and that, if it had been operated longer, it would have been able to remove the stipulated quantity of material, and that plaintiff was entitled to recover.

Action in the district court for St. Louis county to recover $2,000 for breach of contract. The answer interposed a counterclaim for $2,500. The case was tried before Fesler, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. Defendant's motion for amended findings and conclusions of law was denied. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*William P. Harrison* and *Roberts & Strong,* for appellant.
*Hugh J. McClearn,* for respondent.

LEES, C.

Action to recover on contract, tried by the court without a jury. The findings were in plaintiff's favor and defendant appeals from an order denying a new trial.

Prior to March, 1914, defendant had entered into a contract with the

[1]Reported in 176 N. W. 193.

park board of the city of Minneapolis to dredge out Lake Nokomis and deposit the material removed in fills and embankments adjacent to the lake. The contract provided that a minimum of 400,000 cubic yards should be removed during the working season of each year. It was contemplated that several years would be required to do the work. It was to be done under the supervision of the superintendent of parks and paid for on estimates made by a designated engineer. Defendant had a small dredge and needed a larger one to fulfil its contract. Under date of March 10, 1914, it made a contract with the Norbom Engineering Company, whereby the latter undertook to construct an electric hydraulic dredge to be delivered within four months. The engineering company began to erect the dredge, but, before completing it, assigned its contract to plaintiff, who completed and delivered the dredge to defendant on or about September 5, 1914.

On October 10, 1914, plaintiff, defendant and the engineering company made an agreement materially modifying the terms of the original contract for the construction of the dredge. A clause in this last contract has given rise to this litigation. It reads as follows:

"In the event that on or before January 1, 1915, the dredge * * * has been able to remove 325,000 yards or more under the contract with the park board of the city of Minneapolis, the party of the third part (defendant) will, at that date, execute a promissory note to the order of the party of the second part (plaintiff) in the sum of Two Thousand ($2,-000) Dollars, due and payable on or before September 1, 1915. It is expressly agreed * * * that the party of the third part will use its utmost endeavor to cause said dredge to remove the said amount of material, and that the said dredge shall be operated continuously so far as possible for that purpose."

During the season of 1914, according to the engineer's estimates, defendant's small dredge removed from the lake 106,899, and the large one 319,864 cubic yards of material. On November 16, 1914, defendant ceased work and laid its dredges up for the season. It then believed that the large dredge had removed more than 325,000 cubic yards of material. At that time, on account of freezing weather, it was impracticable to operate the dredge, but thereafter and prior to January 1, 1915, it could have been operated and would have been able to remove 325,000 cubic

yards of material. After the dredge was delivered and until November 16 it was operated continuously for 24 hours a day, except on Sundays, and for five days in the month of October, when it was laid up for the purpose of installing certain gears furnished by plaintiff. During the progress of the work, the engineer made four separate estimates of the quantity of material handled by the dredge. According to these estimates it had removed from the bed of the lake 98,248 cubic yards of sand, classified as "dry" material and 333,222 cubic yards of mud, classified as "wet" material. The engineer deducted 33½ per cent of the wet material for shrinkage in the embankments and fills, fixing the net allowance to defendant on this class of material at 221,616 cubic yards. In the fall of 1917, he ascertained that his deduction for shrinkage had been too small, and made another estimate, crediting defendant with but 207,950 cubic yards of wet material for the season of 1914. There was testimony tending to show that between November 16, 1914, and January 1, 1915, Lake Nokomis was free from ice for several days in succession, when the mean temperature was as high or higher than it had been when the dredge had been operated successfully.

Shortly after January 1, 1915, plaintiff requested defendant to execute the $2,000 note mentioned in the contract, but it declined, on the ground that the dredge had failed to remove 325,000 cubic yards of material prior to January 1, and this action followed.

The court found that defendant might have operated the dredge longer than it did, and that, if it had been so operated, it would have been able, during the season of 1914, to remove 325,000 cubic yards of material under defendant's contract with the park board. The sole question presented is whether the evidence supports the finding. An examination of the record has satisfied us that it does.

Defendant agreed to operate the dredge continuously so far as possible and to use its utmost endeavor to cause it to remove the required amount of material. It was not agreed that it should actually remove the quantity specified, but that it would be able to do so if operated continuously. Defendant's superintendent testified that he believed, when the dredge was laid up on November 16, that "Mr. Norbom had lived up to his contract and we thought that dredge was over. We thought the hydraulic dredge was away by. If we hadn't so thought, that it was going to earn

his money, we would have been worried. We thought he had earned his money. * * * If it didn't earn this money—we thought it would come out when Mr. Godward's (the engineer's) estimate came in." A record of daily operations was kept on the dredge, from which it appeared that during an average day's run it would remove from 5,000 to 6,000 cubic yards of material. According to the original estimates, it handled 319,864 cubic yards prior to November 16. On this basis, if it had been run two days longer, it would have removed more than the required amount. It was possible, though difficult, to have operated it that much longer and apparently that would have been done but for defendant's belief that it had already removed more material than the required minimum.

It is argued that, since the final estimate showed a total of only 306,198 cubic yards, it cannot be said that there was a substantial performance of the contract. We think the rights of the parties were not fixed by the 1917, but by the 1914, estimates. The contract provided that the note was to be given on January 1, 1915, and was to be payable on or before September 1, 1915. The parties did not intend to wait until the work was completed before carrying out this part of their contract. Its terms indicate a clear intention to make settlement at the close of the season of 1914 and on the basis of the engineer's estimates during that season. The two dredges operated in 1914 removed the required quantity of material as specified in defendant's contract with the park board. It has been paid the full contract price without deduction, the park board having accepted the work done in 1914 as a satisfactory performance of its contract.

We think the findings of the learned trial court were in entire accord with the weight of the evidence and with the rights of the parties under their contract. The order denying a new trial is, therefore, affirmed.